IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICIA ALLEN and DEBRA
VILLALOBOS-WHALEY,

    Plaintiffs,

v.                                                                           No. 07-CV-00168 LAM/WDS

LORRAINE JOHNSON and JANE DOE, in
their individual capacity, CHARLENE
TSOODLE-MARCUS, in her individual and
official capacities, and THE BOARD OF
COUNTY COMMISSIONERS OF TAOS
COUNTY,

    Defendants.

**RESPONSE TO DEFENDANTS' MOTION TO
SET ASIDE DEFAULT JUDGMENT**

    Plaintiffs Patricia Allen and Debra Villalobos-Whaley, by and through their attorneys Baker Law Office, LLC (Adam S. Baker) and Maestas & Boothby, P.C. (Alan H. Maestas), make this response in opposition to Defendants' Motion to Set Aside Default Judgment, which was filed on July 5, 2007 (Doc. 23), and state as follows.

**I. Introduction**

    Defendant the Board of County Commissioners of Taos County ("Defendant Board") was served with the summons and complaint in this matter on February 27, 2007, and the deadline for it to file a responsive pleading was March 19, 2007. (*See* Return of Service, filed Mar. 27, 2007 (Doc. 7)). Defendant Charlene Tsoodle-Marcus was personally served with the summons and complaint in this matter on March 11, 2007, and the deadline for her to file a responsive pleading was April 2, 2007. (*See* Return of Service, filed Mar. 27, 2007 (Doc. 6)). Defendant Lorraine

Johnson was personally served with the summons and complaint in this matter on April 25, 2007, and the deadline for her to file a responsive pleading was May 15, 2007. (*See* Return of Service, filed May 22, 2007 (Doc. 12)). None of these defendants filed a responsive pleading or otherwise entered an appearance until Plaintiffs provided them with notice of the pending damages hearing by letter on June 29, 2007. (*See* Letter from Adam S. Baker to Taos County Attorney Sammy L. Pacheco, attached as *Exhibit 1*).

As a result of Defendants' failure to file an answer or otherwise enter their appearance, this case has been substantially delayed and Plaintiffs have suffered irreversible prejudice. Further, Defendants fail to offer sufficient a justification for their failure to answer Plaintiff's complaint. Instead, Defendants rely primarily on the failure of *Plaintiffs' counsel* to alert them to the need to answer despite the ample experience of their own County Attorney and their insurer in defending suits like these. Of course, Plaintiffs' counsel had no legal obligation to alert Defendants to the need to answer Plaintiffs' complaint and the fact that Defendants failed to answer not just one (1) but three (3) separate complaints served sequentially on three (3) separate defendants demonstrates a complete and utter lack of diligence or reasonable effort by Defendants, their counsel, and their insurer to comport themselves with the Federal Rules of Civil Procedure. The Court should exercise its discretion to deny Defendants' motion under the following legal analysis.

## II. Argument

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Courts are authorized to enter judgment upon a party's default, which may only be set aside in accordance with Fed. R. Civ.

P. 60(b).  Fed. R. Civ. P. 55(b)(2), (c).  Rule 60(b), in turn, provides that a court may relieve a party from a final judgment, order, or proceeding for reasons including "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  "Setting aside a default entry or default judgment is addressed to the sound discretion of the trial court, and they are given 'a great deal of latitude' in exercising their discretion."  *Nikwei v. Ross Sch. of Aviation, Inc.,* 822 F.2d 939, 941 (10th Cir.1987) (footnote omitted).

The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 395 (1993) (discussing application of the excusable neglect standard of Fed. R. Bankr.P.R. 9006(b)(1)).  Relevant factors include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *Id.*  As Defendants recognize, the moving party must also demonstrate the existence of a meritorious defense to the underlying claims.  (*See* Defs.' Mot. Set Aside at 3 *(*citing *Barta v. Long*, 670 F.2d 907 909 (10th Cir. 1982)); *see also Cessna Fin. Corp. v. Bielenberg Masonry Contracting Inc.,* 715 F.2d 1442, 1444-45 (10th Cir. 1983) (discussing, in the context of motion to set aside default judgment, the need to avoid frivolous litigation).

Initially, Defendants cite grounds of "mistake, inadvertence, or excusable neglect" based on their contention that the New Mexico Association of Counties (hereinafter "the Association") failed

to assign defense counsel after it received Plaintiffs' complaint from the County.[1] (*See* Defs.' Mot. Set Aside at 1, 4). However, this argument only addresses the complaint served on Defendant Board on February 27, 2007. (S*ee id.*) Critically, Defendants fail to mention what became of the complaints served on Defendants Tsoodle-Marcus and Johnson on March 11, 2007 and April 25, 2007, respectively. For example, Defendants do not attempt to explain why service on these individual Defendants failed to alert anyone to the fact that counsel had not been assigned to defend the case or whether these Defendants even informed the County that they had been served. Given the complete failure to explain why Defendants Tsoodle-Marcus and Johnson failed to answer, it is well-within the Court's discretion to deny the request to set aside the default judgments as against them without further analysis. The Court should also deny Defendants' request because a further analysis of the factors governing this determination demonstrate that they have not met their burden to justify the setting aside of the default judgment entered against them.

Defendants have yet to file their answers although they were due months ago. Inevitably, their failure to timely serve responsive pleadings will set this case back many months and frustrate the goals of judicial economy and speedy resolution of civil cases. *See generally* Civil Justice Expense and Delay Reduction Act, 28 U.S.C. § 471, *et seq.* The asserted reason for this delay – the Association's failure to appoint counsel – does not explain the Taos County Attorney's failure to monitor the progress of the lawsuit, or Defendants' own efforts to secure representation.

---

[1] In conversations between counsel on this issue, Defendants' counsel stated that the Association's notes indicated that the case *had been* assigned to defense counsel. While Plaintiffs have no other information to indicate that defense counsel was actually assigned by the Association, this disclosure at least places into question the veracity of Steve Kopelman's sworn statement that his "records indicate that the Plaintiffs' Complaint was not forwarded to defense counsel for handling." (Ex. B, Aff. Steve Kopelman ¶ 4).

"Carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)." *Paiz v. U.S. Postal Svc.*, 214 F.R.D. 675, 679 (D.N.M. 2003) (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990)). Further, Defendants actually have a strong incentive to delay this proceeding because Plaintiffs have reasonable grounds to believe that discovery would reveal a pattern and practice of unconstitutional strip searches for which Defendant Board might be held liable in a class action lawsuit similar to the case filed against the Santa Fe County Adult Detention Center. That case, of course, resulted in a multi-million dollar settlement. (*See* Dec. 8, 2006 Final Judgment and Ord. (Doc. 63), filed in *Leyba, et al. v. Santa Fe County Board of Commissioners, et al.*, No. CIV-05-0036 (D.N.M.)). With the passage of time, Defendants may avoid potential liability for claims more than three (3) years old given the statute of limitations applicable to the constitutional claims at issue.[2]

Defendants try to appeal to the Court's sympathy by asserting that the citizens of Taos County will be required to bear the brunt of Defendants' failure to answer Plaintiff's complaint unless the default judgment is set aside.[3] (Defs.' Mot. Set Aside at 4 (asserting the citizens of Taos County "are responsible for satisfying any judgment against Defendants in this matter.")). To the contrary, any judgment entered against Defendants will likely be satisfied by the entity on whose shoulders fault squarely lies for purportedly failing to assign counsel, *i.e.*, the Association.

---

[2]     While Plaintiffs are not aware of any specific evidence that Defendants have intentionally delayed this proceeding for these reasons, the motive to do so is clearly present.

[3]     A more valid argument could be made that the citizens of Taos County risk further violations of their constitutional rights unless and until the issues raised in this lawsuit are finally resolved.

Moreover, this argument has no bearing on whether Defendants are entitled to relief from a default judgment.

Defendants seek to lay blame on Plaintiffs' counsel for failing to notify them that they were in default prior to the Court's entry of default judgment. (Defs.' Mot. Set Aside at 4-5). Indeed, Defendants go so far as to imply that Plaintiffs' counsel had a heightened duty in this regard because they had some contact with representatives from the Association in other lawsuits against other counties insured by the Association. (*Id.* at 5). To the contrary, a party is only entitled to notice of an opposing party's application for default judgment when it has appeared in the action. Fed. R. Civ. P. 55(b)(2) ("If the party against whom judgment by default is sought *has appeared in the action*, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."). In this case, Plaintiffs had no obligation to notify Defendants of the application for default judgment because neither Defendants nor their representatives ever appeared in the action.

Defendants make an equally unconvincing argument that they have a meritorious defense to Plaintiffs' claims. Specifically, Defendants contend they should be permitted an opportunity to identify the female detention officer who strip searched Plaintiff Allen on February 19, 2004. (*See* Defs.' Mot. Set Aside at 5). Ironically, "Defendant Jane Doe" is the only "party" against whom default judgment has *not* been entered. There is no assertion of a meritorious on behalf of the three (3) defendants against whom default judgment has been entered because there is simply no such defense. *See Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) (stating that trial court must have before it more than "mere allegation that a defense exists" in order to determine whether the defendant has a meritorious defense); *$55,518.05 in U.S. Currency,* 728 F.2d 192, 195 (3rd Cir. 1984)

(stating defendant must allege "specific facts beyond simple denials or conclusionary statements" in order to establish a meritorious defense).

Plaintiffs have alleged straight forward facts in support of their claims that they were unlawfully strip searched at the Taos County Detention Center (TCDC). (*See* Pls.' Compl. ¶¶ 8-23). For example, Plaintiff Allen was arrested and booked into the TCDC on a warrant for an unpaid traffic ticket. (*Id.* ¶¶ 8-14). After booking, a female guard took her back to a cell and made her strip naked then "squat and cough." (*Id.* ¶ 15). Plaintiff Allen was emotionally traumatized by the strip search and outraged that her rights had been violated in this regard for an unpaid traffic ticket.[4] (*See id.* ¶¶ 24-25).

Plaintiff Villalobos-Whaley was arrested on suspicion of driving while under the influence of intoxicating liquor. (*Id.* ¶ 16). Defendant Johnson took her to a holding cell where she ordered her to undress so she could search her. (*Id.* ¶¶ 18-20). Plaintiff Villalobos-Whaley pleaded with Defendant Johnson to allow her to keep her underwear on, because she had recently undergone breast cancer surgery and was embarrassed by her appearance. (*Id.* ¶ 20). Defendant Johnson refused, and made Plaintiff Villalobos-Whaley remove and hand-over her bra. Defendant Johnson then ordered her to pull down her underwear, turn around, and "bend over and cough." (*Id.*) Plaintiff Villalobos-Whaley became upset and started crying during the strip search. (*Id.*)

---

[4] The evidence Plaintiffs intend to present at the damages hearing will demonstrate that Plaintiff Allen's trauma was exacerbated by the fact that she had previously undergone breast reduction surgery, which left visible scarring on her breasts about which she was very self-conscious when the guard forced her to strip and reveal her naked body.

As if these facts were not convincing enough, the TCDC had a written strip search policy which had been in effect without amendment since at least 1987 when the strip searches at issue occurred. That policy provided in part that "strip searches *shall be conducted* if there is reason to believe that the inmate poses a security risk." (See TCDC Policy No. C-170, attached as *Exhibit 2* (emphasis added)). However, it is well-established in the Tenth Circuit that a strip search is not permitted absent reasonable suspicion that a detainee is in possession of drugs or contraband. *See Hill v. Bogans,* 735 F.2d 391, 394 (10th Cir.1984); *Chapman v. Nichols,* 989 F.2d 393, 398 (10th Cir. 1993). Clearly, the TCDC's paper policy is overly broad and unconstitutional on its face. (*Compare to Performance-Based Standards for Adult Local Detention Facilities,* 4th Ed. (2004)*,* Policy No. 4-ALDF-2C-03, attached as *Exhibit 3* (providing that "[a] strip search of an arrestee at intake shall *only be conducted* when there is reasonable belief or suspicion that he/she may be in possession of an item of contraband. The least-invasive for of search is conducted.") (emphasis added)).

While the preferred disposition of a case is on its merits rather than by default judgment, "this judicial preference is counterbalanced by considerations of social goals, justice and expediency, a weighing process which lies largely within the domain of the trial judge's discretion." *Gomes*, *supra,* 420 F.2d at 1366 (internal footnote omitted). Here, the strength of Plaintiffs' constitutional claims together with Defendants' failure to demonstrate a meritorious defense lead to the conclusion that to set aside the default judgments would be to embrace frivolous, and therefore needless, litigation. Defendants' motion to set aside default judgment should be denied in order to serve the important interests cited in *Gomes*.

Finally, Plaintiffs have been irreversibly prejudiced by Defendants' failure to timely answer their complaint and this prejudice will be compounded if the Court sets aside the default judgment.

First, Plaintiffs have been prevented from seeking discovery during the delay caused by Defendants' failure to answer. *See Mullin v. High Mountain,* 2006 WL 1520187, *4 (10th Cir. Jun. 2, 2006 Ord. and Judgment) (unpublished) (holding that district court did not err in determining that delay substantially prejudiced plaintiffs who were unable to "conduct discovery, preserve evidence, obtain documentation, and otherwise structure their case for resolution" after defendant corporation's intervening bankruptcy). For example, Plaintiffs expected to seek substantial documentary evidence and information regarding other incidents of unlawful strip searches in support of their claims that Defendant Board maintained an unconstitutional strip search policy or practice. However, the passage of time will inevitably make it more difficult to locate former TCDC detainees who may have been strip searched given the often vagrant nature of persons who come into contact with the criminal justice system. TCDC has also undergone significant turnover in the past year, and former employees may be difficult to locate.[5] Moreover, there have been at least three (3) changes in administration at the TCDC since Defendant Tsoodle-Marcus' abrupt departure from her position as Jail Administrator, and record-keeping at the jail is a serious concern given the lack of any administrative continuity. (*See* Jul. 12, 2007 Taos News article, "County Settles on 'Experience' for Jail Head," attached as *Exhibit 4*).

Second, Plaintiff Villalobos-Whaley received psychological counseling for approximately nine (9) months after her unlawful strip search at the TCDC. (Aff. Debra Villalobos-Whaley ¶¶ 2-3,

---

[5] On information and belief, Defendant Johnson no longer works at the TCDC and Plaintiffs' counsel has personal knowledge of at least one other jail guard whose employment at the TCDC was terminated in the past year. There are probably other jail guards who have come and gone, although Plaintiffs have no way of ascertaining that information given their inability to conduct discovery.

attached as *Exhibit 5*). However, she is presently unable to continue treatment due to her financial inability to pay for it. (*Id.* ¶ 4). As a result, Plaintiff Villalobos-Whaley's treatment is essentially on-hold unless and until she is able to find the means to pay for it, and she intends to go back to treatment in the event she makes a recovery of money damages in this case. (*Id.* ¶ 5). Additionally, Plaintiff Villalobos-Whaley is naturally experiencing additional stress as a result of the delay in this case together with her hope that it would be resolved when she learned of the Court's default judgment order. (*Id.* ¶ 6). Although all plaintiffs in federal court generally enjoy the right to pursue their cases and to vindicate their claims expeditiously, *see, e.g., Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (D.C.Pa. 1980), Plaintiff Villalobos-Whaley's interest in this regard is particularly strong given her urgent need to achieve closure and obtain care for the psychological injuries Defendants caused her.

Lastly, Plaintiffs have incurred substantial attorney's fees and costs as a direct result of Defendants' failure to timely answer Plaintiffs' complaint. These fees and costs include, but are not limited to, in excess of 20 hours spent by Plaintiffs' attorneys conducting research, drafting the default judgment motions, orders, and related documents, preparing for the damages hearing on June 19, 2007, that was vacated at the last minute, and responding to the instant motion. The foregoing prejudice demonstrates that the Court should deny Defendants' motion.

### III. Conclusion

A court's discretion whether to set aside a default judgment is extremely broad, and involves the analysis of several important factors. Here, the Association's failure to appoint counsel to represent Defendant Board is not sufficient justification and Defendants have failed to advance

any reason whatsoever for the individual Defendants' default.  Further, the length of delay and prejudice Plaintiffs have suffered as a result of Defendants' default weigh in favor of denying the requested relief.  Finally, the absence of a meritorious defense to Plaintiffs' claims is glaring.  The Court should decline to set aside the default judgments on grounds that to do so would simply delay the inevitable.  Defendants will have their opportunity to be heard at the damages hearing presently scheduled for August 21, 2007, at which the only true issues in this case may be decided.

        Respectfully submitted,

        /s/ Adam S. Baker
        ADAM S. BAKER
        BAKER LAW OFFICE, LLC
        515 Gusdorf Rd., Suite 1
        Taos, New Mexico 87571
        (505) 751-3027

        ALAN H. MAESTAS
        MAESTAS & BOOTHBY, P.C.
        224 Cruz Alta Rd., Suite H
        Taos, New Mexico 87571
        (505) 737-0509
        *Attorneys for Plaintiffs*

I hereby certify that a copy of the foregoing was served via electronic transmission to:

Jonlyn M. Martinez, Esq.
William D. Slease, Esq.
Slease & Martinez, P.A.
Attorneys for Defendants
P.O. Box 1805
Albuquerque, New Mexico 87103-1805

on this 26th day of July, 2007.

/s/ Adam S. Baker
Adam S. Baker